UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| PAMELA DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:15-cv-01097 |
| | ) | CHIEF JUDGE CRENSHAW |
| DARIN GORDON, in his official | ) | |
| capacity as the Deputy Commissioner | ) | |
| of the Tennessee Department of | ) | |
| Health Care Finance and Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before this case was transferred to the undersigned, Senior Judge John T. Nixon entered an Order (Doc. No. 22) dismissing some of Pamela Davis's claims, but withholding a ruling on her claim under Title V of the Americans With Disabilities Act ("ADA") pending further briefing. (Doc. No. 22 at 9). Those briefs (Doc. Nos. 26 and 30) having been received and considered, the Court finds that Defendant is entitled to **DISMISSAL** of the Title V claim as well.

### I. Background

The relevant factual allegations set forth in the Amended Complaint (Doc. No. 8) are as follows:

Plaintiff was hired by the Tennessee Department of Health Care Finance and Administration ("HCFA") at some point in 2007. In December 2013, she became a Managed Care Specialist 3, a clerical position involving a lot of data entry. (Id. ¶¶ 7, 12).

After assuming the new job, Plaintiff began experiencing pain in her neck, shoulders, and wrists, and she informed her Group Manager about the difficulties she was having. (Id. ¶¶ 13, 14).

1

In early 2014, Plaintiff began wearing wrist splints because the amount of data she was required to enter caused a great deal of wrist and arm pain. Further, in July of that year, Plaintiff injured her ankle and had to wear athletic shoes at work while her ankle healed. (Id. ¶¶ 17, 18).

Plaintiff asserts she asked for a reasonable accommodation, but was informed she needed to provide medical documentation before any part of her job could be modified. She also claims that she was told "maybe this [job] just isn't right for you." (Id. ¶ 20).

In August 2014, Plaintiff was evaluated by her Group Manager who indicated that Plaintiff "needed to 'take less time off work unless it is a doctor's appointment or deemed necessary,'" even though Plaintiff had not been asked why she had been absent and, in fact, the time she took off from work was accrued annual and sick leave. (Id. ¶ 21). A month later, Plaintiff spoke with HCFA's Family Medical Leave Act coordinator about her medical condition and was informed that she needed to speak with someone in human resources.

On October 2, 2014, five days after she talked to human resources, Plaintiff was instructed to meet with her Group Manager and the Group Director, where she was presented with termination papers. (Id. ¶¶ 25, 26). Plaintiff was placed on paid leave beginning October 7, 2014 and terminated effective October 17, 2014.

Based upon the foregoing events, Plaintiff filed suit in this Court raising four federal claims, including a claim for interference, retaliation, and intimidation under Title V of the ADA. Named as Defendant is Darin Gordon in his official capacity as the Deputy Commissioner of HCFA. He moves to dismiss the Title V claim on Eleventh Amendment grounds.

## II. Analysis

"[T]he ADA is designed 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" Tennessee v. Lane, 541 U.S. 509, 516 (2004) (quoting 42 U.S.C. §§ 12101(b)(1), (b)(4)). "It forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." Id. at 516-17. Title V, in turn, prohibits retaliation, interference, coercion, or intimidation with respect to individuals invoking the protection of Titles I through III. 42 U.S.C. § 12203.

Neither the Supreme Court nor the Sixth Circuit has decided whether Title V abrogates a state's Eleventh Amendment sovereign immunity. Those that have addressed the issue generally fall in two camps depending upon whether the alleged retaliation is based upon an employment discrimination claim in violation of Title I, or a public services discrimination claim in violation of Title II. This split appears to be driven by the manner in which the Supreme Court has treated sovereign immunity under Titles I and II.

In Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356 (2001), the Supreme Court held that a state is immune from suit under Title I of the ADA unless it waives sovereign immunity. In so doing, the Court noted that Congress exceeded its powers in seeking to abrogate a state's immunity from private suit when it enacted Title I because the power to enact "appropriate legislation" under § 5 of the Fourteenth Amendment was limited to actual "state transgressions," and there was no legislative history supporting a pattern of unconstitutional action by the states in regard to employment discrimination. Id. at 368-69. The Court specifically noted, however, that it was "not disposed to decide the constitutional issue whether Title II, which has

somewhat different remedial provisions from Title I, is appropriate legislation under § 5 of the Fourteenth Amendment." Id. at 360, n.6.

The question left unanswered in Garrett was addressed in both Lane and United States v. Georgia, 546 U.S. 151, 154 (2006). In Lane, the Supreme Court "conclude[d] that Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress's § 5 authority to enforce the guarantees of the Fourteenth Amendment." 541 U.S. at 533-34. In Georgia, the Court held that, for other claims under Title II, courts should "determine . . . on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." 546 U.S. at 159.

The foregoing cases have been read by the Sixth Circuit as standing for the proposition that, while "Congress has expressed an unequivocal desire to abrogate Eleventh Amendment immunity for violations of the ADA[,] . . . the Supreme Court has held that Congress's attempted abrogation is only valid in limited circumstances, depending upon the nature of the ADA claim." Babcock v. Michigan, 812 F.3d 531, 534 (6th Cir. 2016). That is, while immunity is not abrogated under Title I, it may be under Title II in certain circumstances.

Based upon Garrett, numerous courts have held that immunity is not abrogated for Title V claims when those claims derive from employment discrimination in violation of Title I. For example, in Demshki v. Monteith, 255 F.3d 986 (9th Cir. 2001), the Ninth Circuit held that a plaintiff's Title V claim against the California Senate Rule Committee – a state agency – was barred,

4

writing:

> We recognize that Garrett arose in the context of Title I, but we nevertheless conclude that the Court's holding necessarily applies to claims brought under Title V of the ADA, at least where, as here, the claims are predicated on alleged violations of Title I. Title V prohibits discrimination against an employee who opposes an "act or practice made unlawful" by the substantive provisions of the ADA. 42 U.S.C. § 12203. There is nothing in the ADA's legislative findings demonstrating a pattern of discrimination by states against employees who oppose unlawful employment discrimination against the disabled. Absent a history of such evil by the states, Congress may not abrogate the states' Eleventh Amendment immunity from Title V claims.

Id. at 988-89. Based on Demshki's lead, numerous other courts have followed suit. See e.g., Ilarraza-Rodriguez v. Puerto Rico, 2017 WL 1048061, at *4 (D.P.R. Mar. 17, 2017); Cook v. Springfield Hosp. Ctr., 2016 WL 6124676, at *7 (D. Md. Oct. 19, 2016); Emery v. Michigan Dep't of Civil Rights, 2016 WL 1090429, at *2 (E.D. Mich. Mar. 21, 2016); Banner v. Dep't Health & Soc. Servs. Div. for the Visually Impaired, 2016 WL 922058, at *4 (D. Del. Mar. 10, 2016); Lucas v. State of Alabama Dep't of Pub. Health, 2016 WL 335547, at *4 (M.D. Ala. Jan. 7, 2016); Rich v. New Jersey, 2015 WL 2226029, at *8 (D.N.J. May 12, 2015); Marx v. Ga. Dep't of Corr., 2013 WL 5347395, at *4 (M.D. Ga. Sept. 23, 2013).

Even though many more cases can be cited for the foregoing proposition, it suffices to note that "[c]ourts have uniformly held that retaliation claims premised on employment discrimination under Title I of the ADA are subject to the Eleventh Amendment," Dugger v. Stephen F. Austin State Univ., 2017 WL 478297, at *9 (E.D. Tex. Feb. 6, 2017) (collecting cases), and Plaintiff does not suggest otherwise. Instead, she cites Sarkissan v. W. Va. Univ. Bd. of Governors, 2007 WL 1308978, at *20 (N..D. W. Va., May 3, 2007) and Maioriello v. New York State Office for Developmental Disabilities, 2015 WL 5749879, at *12 (N.D.N.Y. September 30, 2015) for the proposition that "courts have, in fact, found the abrogation of sovereign immunity to be valid as to

5

Title V claims." (Doc. No. 26 at 4).

Plaintiff's reliance on Sarkissan and Maioriello is misplaced. Both involved underlying Title II claims and, based upon Lane and Georgia, "some courts have held that no [Eleventh Immunity] bar applies to retaliation claims premised on violations of title II of the ADA." Dugger, 2017 WL 478297, at *9. In fact, the court in Sarkissan distinguished a retaliation claim premised on Title I from one based on Title II, and recognized Demshki's application of Garrett to retaliation claims predicated on alleged violations of Title I. Sarkissan, 2007 WL 1308978, at *8. For its part, the court in Maioriello, citing Sarkissan and other cases, specifically limited its holding to Title V retaliation claims predicated on Title II. Maioriello, 2015 WL 5749879, at *12.

Here, Plaintiff's Title V retaliation claim is exclusively based upon her allegation that she was discriminated against in employment. More specifically, Plaintiff alleges that she (1) "could perform the essential functions of her job with or without a reasonable accommodation"; (2) "asked for a reasonable accommodation," but was refused; (3) was told "maybe this [job] just isn't right for you," and that "she needed to 'take less time off work;'" and (4) "was treated differently than younger employees" and those "who did not have known disabilities or serious medical conditions[.]" (Doc. No. 8, Amended Complaint ¶¶ 11, 19, 20, 21, 27, 29).

The Court now joins the great weight of authority that holds sovereign immunity attaches to Title V retaliation claims that derive upon allegation of employment discrimination under Title I. As a consequence, Defendant is entitled to dismissal of this claim as set forth in Count Two of the Amended Complaint.

### III. Conclusion

Based upon the foregoing, Defendant's "Motion for Partial Dismissal" (Doc. No. 13) is

6

**GRANTED** insofar as it seeks dismissal of Plaintiff's Title V claim under the ADA and that claim is hereby **DISMISSED**. Because this ruling, in conjunction with Judge Nixon's Order of September 2, 2016 (Doc. No. 22), resolves all matters relating to Defendant's Motion the Clerk shall **TERM** Docket No. 13 as a pending Motion.

IT IS SO ORDERED.

*[Signature]*
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE